# Pulliam  v.  Schimpf.

*Action for Breach of Partnership Agreement.*

1. *Contract; when too indefinite and uncertain to support an action.*
The plaintiff established and conducted a shooting gallery in a build-
ing furnished by the defendant, under a contract providing that de-
fendant should furnish that building, that plaintiff should furnish
the necessary rifles, targets and other apparatus, and manage and
conduct the business, that the net profits arising from the business
were to be divided between them, and that the business was to con-
tinue so long as it was profitable or paid expenses. *Held*, that the
contract, because of its indefiniteness and uncertainty, did not fur-
nish a cause of action which would support a judgment for a breach
thereof by the defendant, by terminating said business.
2. *Damages; error without injury.*—Where the verdict establishes
that the plaintiff is not entitled to recover at all, errors relating to
the measure of damages are not available to reverse the judgment.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. JAMES T. JONES.

PILLANS, TORREY & HANAW, for appellant.—The case
stands thus: The plaintiff proves the unlawful viola-
tion of the contract by the defendant breaking it up and
compelling the plaintiff to abandon the profits on his
part. He offers to prove the net profits that were being
made up to the very day of this unlawful act, and de-

[Pulliam v. Schimpf.]

monstrates his ability to prove it with absolute certainty, and he shows that the defendant below continues this venture on his own account, and offers to prove with absolute certainty exactly the profits that resulted to the defendant from the continuance of the shooting gallery business during the time he continued it, but the court below has said that no proof of this character is competent. In this ruling the court below practically decided that in no case would it be competent to prove the loss of profits that might have been earned. This ruling is in direct conflict with the following authorities :—*Danforth v. Tennessee & Coosa R. R. Co.*, 93 Ala. 614; *Brigham v. Carlisle*, 76 Ala. 243 ; *George v. Railroad Co.*, 8 Ala. 234 ; *Fail v. McRee*, 36 Ala. 61 ; *Rainie v. Holcomb*, 66 Ala. 548 ; 5 Am. & Eng. Ency. of Law, 32. We submit, that it cannot be argued with any degree of plausibility that the profits attempted to be shown were merely speculative and conjectural, and so remote as not to be allowable.

L. H. FAITH, *contra.*—1. The profits sought to be proved were purely speculative and conjectural, and were not recoverable.—*Brigham v. Carlisle*, 78 Ala. 248 ; *Pollock v. Gantt*, 69 Ala. 373 ; *Union Refining Co. v. Barton*, 77 Ala. 155 ; *Beck v. West*, 87 Ala. 213. 2. There were no *data* before the jury on which they could render a verdict for more than nominal damages.—*Moody v. Walker*, 89 Ala. 619 ; *Walker v. State*, 85 Ala. 7. 3. Appellant was not entitled to recover at all. The contract as alleged and proved was too uncertain; it had no fixed period of duration.—*Howard v. East Tenn. Va. & Ga. R. R. Co.*, 91 Ala. 270; *Erwin & Williams v. Erwin*, 25 Ala. 236. 4. If there was error in the rulings as to the measure of damages, it was error without injury.—*Calhoun v. Hannon & Michael*, 87 Ala. 277 ; *Waldman v. North British Ins. Co.*, 91 Ala. 170 ; *Foster v. Johnson*, 70 Ala. 249.

HEAD, J.—This case formerly came before this court upon assignments, as errror, of the rulings of the court below sustaining demurrers to the complaint.—100 Ala. 362. The contract sued upon by appellant, Pulliam, as averred in the first count, was that he and appellee (defendant below) agreed to establish and run, a shooting

[Pulliam v. Schimpf.]

gallery in a certain specified building, in Mobile, which was then in possession of defendant, the business to be managed and conducted by plaintiff; under which agreement plaintiff was to fix up the room and necessary partitions in a manner suitable for a shooting gallery, and to furnish the rifles and targets and other necessary apparatus, and the defendant was to furnish the building; and the net profits arising from said business were to be divided between the plaintiff and defendant. By the terms of the agreement (which was made February 24, 1892) the business was to continue until about the first of April, or at least until after *Mardi Gras* day; and shortly after *Mardi Gras* day, and about the first of April, it was agreed between the parties that the business should continue upon the same terms, and under the said agreement, so long as the business paid expenses; and the plaintiff, in addition to what he had already done, was to paper the walls of the room in which the business was carried on. The plaintiff averred performance of the agreement on his part until May 15th following, when defendant broke it, on his part, by terminating the business, in a manner specified, causing a loss to plaintiff of profits which he alleges he would have realized from a continuance of the business. The second count is substantially the same, except it alleges only one agreement, and that, in reference to the duration of the business, it was to continue so long as the same was profitable or paid expenses. The original demurrer to this complaint, which the Circuit Court sustained, raised the question whether or not the agreement created a partnership between the parties; and, on appeal, this court confined its consideration to that question, and held that a partnership was not created, because there was no stipulation that the contracting parties should share the losses, and reversed the judgment. After remandment, new demurrers were interposed, taking the position that, whether a partnership or not, the agreement was for no definite period, and was dissolvable at the will of either party. These demurrers were overruled, and the cause went to trial upon issues joined upon pleas, and resulted in a verdict and judgment for defendant, from which the plaintiff prosecutes this appeal. The assignments of error all relate to the admeasurement of damages.

[Pulliam v. Schimpf.]

If the objection made by the defendant to the complaint was well taken, it follows, from its nature, that a substantial cause of action, which would support a judgment, is not disclosed; and, though the ruling upon the demurrers is not before us, yet as, in no event, could there be a recovery for the want of a cause of action, it is proper to dispose of the case here upon the principle invoked by the objection. In fact, such would be our course *ex mero motu*, in the absence of objection. A contract void on its face for uncertainty or other cause will not be enforced, and hence will not furnish a cause of action which will support a judgment.

We think there can be no doubt that the contract in the present case is of that character. By its terms the business was to continue so long as the business paid expenses, or was profitable or paid expenses. If the business should, so long, prove either profitable, or merely sufficient to pay expenses, both parties were, if the agreement is valid, bound to keep it going without limit. The defendant was bound for a lifetime, to furnish his house for carrying on the business, though he may re-receive but a farthing of profit as compensation for its use, or though he receive nothing at all, if the business proved sufficient to pay the expenses of its operation. Not only this, but he imposed a perpetual, indefinite restraint upon the alienation or other disposition or use of the house. The plaintiff bound himself for a lifetime, if the business should so long yield enough to pay its expenses, to furnish his guns, &c., and his own personal labor and services to the carrying on of the business, for which he might receive a bare farthing, or no compensation at all. How was the end of the contract to be ascertained? Let us suppose the parties at a disagreement at to whether the business was profitable, or sufficient to pay expenses, the solution of which was necessary to determine whether it should proceed or be dissolved. The plaintiff, we will say, contends that upon a fair consideration and estimate of the assets and liabilities, and of repairs, replenishments of stock and other expenses necessary to be incurred, the business is not paying expenses, to say nothing of the loss of his own time and services and use of his property. The defendant contends, upon like considerations, that the business is paying expenses, and ought to proceed. Is there a conceiv-

[Pulliam v. Schimp.]

able remedy, in a court of justice, for the settlement and decision of the difference, which would be finally determinative of the right to have the business continue for any definite time, or be dissolved? Suppose a resort to equity to dissolve and settle it, and, after the law's delays—after the court shall have taken an account of its internal workings, its·successes and failures, in order to determine whether or not it was paying expenses at the institution of the suit—it is determined that it was paying expenses, and the bill is consequently dismissed ; and, thereafter, a new disagreement arises every week or month,—shall there be as many suits as there are disagreements, until it shall be decided that the business does not pay expenses, and may be dissolved? Suppose, pending the first, or any subsequent suit, the business, in fact, ceases to pay expenses, shall it nevertheless continue until a new bill can be filed, and a decree establishing the fact obtained? Then, again, upon what principle shall the court proceed? What is meant by paying expenses? Will the dullness of the trade for a day, a week or a month, or a year, causing for that time, an excess of expense over receipts, which may be compensated by the better success of the following day, or week, or month, or year, terminate the contract? How long must the failure continue? Who, or what court, has the right to fix the limit? A business of this character, involving complicated settlements of account, which has been conducted by parties, whether, strictly speaking, a partnership or not, is so analogous thereto, that a court of equity is the only forum to determine the rights of the parties, neither party having taken it into his hands to violate a covenant of the articles of agreement. Pursuing this remedy a party may file a bill for a dissolution of the contract, for cause, prior to the expiration of the time fixed by the parties for its continuance. Many causes of such relief, arising either from the fault of parties, or without fault, may be found in the books. Profit being the aim of all such agreements, manifest unprofitableness of the enterprise is a cause. A loss or destruction of the principal means of conducting the business is a cause. A sale by a party of his interest, or a judicial sale thereof by creditors, is a cause. For these and other causes the jurisdiction of the court to dissolve and settle the business, in advance of the

[Pulliam v. Schimpf.]

time fixed therefor by the agreement, is commonly invoked; but we think it is yet to be found where the jurisdiction was exercised upon no other alleged equity than the equity to have determined the intent and meaning of the parties, as to the duration of the business, upon an agreement, either so uncertain and indefinite as to be incapable of evincing its meaning, without the arbitrary interpolation of terms not found in it, or of such a character that the decree pronounced may finally and conclusively determine absolutely nothing, but may leave the matter open for a new suit, of the same character and purpose, every week, month or year thereafter, until a dissolution shall be decreed, or of such a character as to require a virtual account of the entire operation of the business, in order to ascertain the happening of the contingency which determines the contract. The tribunals of the people are not open for purposes of this sort.

Again, in all human conception, what is the measure of damage for the breach of an agreement like this? The only measure alleged is the loss of anticipated profits. Conceding that past profits are legal *criteria* by which to judge the future, for or upon what period of time must the future profits be computed? Does the plaintiff, in his declaration or proof, point us to a time certain, or, in the remotest degree, probable, when the business would have ceased to pay expenses? Shall the court arbitrarily assume that it would have paid expenses, and therefore entitled to continue as a going concern, for the residue of the plaintiff's life; and that profits, such as the business had earned, should be awarded him for the entire period of his life expectancy? His personal services, under the contract, entered largely into his profits. Shall he remain idle the rest of his days and require the defendant to pay him the value of his services; or shall he utilize his services while he lives, and earn, possibly, more than they would have realized in the shooting business, and make the defendant no allowance therefor! How are these alleged rights, the outgrowth of such indefinite duration and unknown circumstances, to be ascertained upon any sort of practical or tangible basis? The plaintiff's loss, manifestly, rests in the idlest conjecture. In *Erwin v. Erwin*, 25 Ala. 236, and *Howard v. East Tennessee, Virginia & Georgia R. Co.*, 91 Ala. 268, we laid down the principle that,

when no breach of a contract could be assigned which could be compensated by any criterion of damages to be furnished by the contract itself, the contract is void for uncertainty. That principle is decisive of this case.

There is another ground which would necessitate an affirmance of the judgment. The first count of the complaint alleges that the agreement was that the specified business was to be carried on so long as it *"paid expenses."* The second count alleged that it was to be carried on so long as it was *"profitable or paid expenses."* Among others, the general issue was pleaded. There was no evidence tending to prove the above recited allegation of the second count. The plaintiff testified that the agreement was that the business was to be carried on as long as it paid expenses. The defendant testified that the agreement was that the business was to be carried on as long as it was profitable. Upon this issue the jury found for defendant. No evidence was introduced tending to support the other pleas, and no question was submitted to the jury in reference to them. All the assignments of error relate to the measure of damages only. Where the verdict thus establishes that the plaintiff is not entitled to recover at all, errors committed by the court, if any, relating to the measure of damagess, are not available to reverse the judgment.—*Calhoun v. Hannan & Michael*, 87 Ala. 277 ; *Foster v. Johnston*, 70 Ala. 249 ; *McLaren v. Alabama Midland R. R. Co.*, 100 Ala. 506 ; *Thompson v. Gray*, 82 Ala. 291 ; *City of Eufaula v. Simmons*, 86 Ala. 515 ; *Glass v. Memphis & Charleston R. R. Co.* 94 Ala. 581.

Affirmed.